The third case on the docket is 2-17-0282, the people of the state of Illinois, plaintiff Appley v. Sheen v. Bouma, defendant of count, arguing on behalf of the defendant of the count, Mr. Chaudet v. Edwards, arguing on behalf of the plaintiff Appley, Mr. Ian Pollard v. Taylor. Ms. Edwards, you may proceed. Ms. Edwards, you may proceed. Good morning, Your Honor, counsel. May it please the Court? My name is Chaudet Edwards, and I represent defendant Appellant, Mr. Shane Bouma. Mr. Bouma was convicted for a violation of the order of protection for raising two issues of appeal, one being the trial court's failure to properly admonish the potential jurors as to the Zaire principles and the erroneous admission of a jail ticket. I'll focus my argument today on the Zaire principles, unless the Court has questions on the jail tickets. Now, the state concedes that the trial court failed to properly question the potential jurors as to each of the four Zaire principles. So, the issue is centered around whether the case was closely balanced as to whether Mr. Bouma was at a protected residence on the night in question. So, in conducting this closely balanced analysis, the Court must evaluate the totality of the evidence and conduct a qualitative common-sense assessment within the context of the case. And I would note that the issue is not the sufficiency of close evidence, but rather the closeness of sufficient evidence. Now, with that in mind, and in the context of this case, it shows that the evidence shows that the case was closely balanced, especially in light of the jury notes that indicated that the jury had trouble rendering a verdict. And I will also note that there was only one element that was at issue in this case, whether Mr. Bouma was at the protected residence. Even with that one issue, the jury still had multiple jury notes during deliberations. So, that goes to show that credibility was the only basis upon which the jury had to decide Mr. Bouma's guilt or innocence. This is so because there was conflicting theories presented to the jury that were both equally plausible. So, on one hand, we have the state's theory, which is that Mr. Bouma was there, and he did so through the testimony of his ex-wife, Melissa Bouma, and his ex-mother-in-law, Linda Butler. And they testified that, well, starting with Mrs. Bouma for his ex-wife's testimony, she testified that he was at the protected residence on the night in question. However, she also admitted that she lied about Mr. Bouma on two prior occasions, one being under oath. So, her credibility was certainly at issue here. And then we have the ex-mother-in-law testifying that she heard a voice on the night in question. However, the officer confirmed that when he initially spoke with the mother, she said that she heard a voice but could not specify the voice. So, the issue is, was he there, right? Yes. Okay. So, if, in fact, the jail tape is admissible, doesn't that tend to corroborate the two occurrence witnesses that he was there? Well, we contend that it was not admissible. I understand your argument. But just say for a minute, it is admissible. Does that corroborate the two witnesses? I would argue that it doesn't because even in light of the jail tapes, the jury notes indicated that it wasn't corroborative. It was too vague and invited too much speculation. And this is shown through their jury notes, specifically the sequence of the jury notes. They initially asked to listen to the jail tapes once more and asked for a transcript of the jail tapes. And after listening to the jail tapes for that third time, they submitted the third jury note asking for the definition of reasonable doubt. So, that indicates that even in light of the jail tapes, they still had trouble rendering that verdict as to the simple issue of whether he was there or not. So, and that also goes to show that it was closely balanced. And in addition to that, the officer couldn't corroborate or contradict either side. If anything, he just pointed out the discrepancy between their testimonies and what they told him, in that they left out pertinent details. In addition to that, there was no physical evidence to corroborate or contradict whether he was there. And so, at the end of the day, we have these two versions that were both plausible. Neither were highly improbable. It's probable that she may have lied, this being her third time, about Mr. Boma. And it's plausible that he may have been present at the protected residence. Both are plausible. So, that makes the case close here because it's not a reasonable doubt issue. It's not the sufficiency of close evidence, but the closeness of sufficient evidence. And here, the jury notes also indicate as well as the evidence. Within the context of this case, the case was closely balanced. And in a close case such as this, where neither side presented accounts that were fully fanciful, it cannot be said that the trial court's error by failing to properly question the potential jurors didn't set the scales against him. And since Your Honor mentioned the instability of the jail tapes, I'll touch on that very briefly. Again, those jail tapes were far too big and invited speculation on the jury's behalf, not only as to what the parties actually meant or what they were saying, but also as to why he went to prison initially. In two of those statements that were admitted, he mentions prison. And those segments were played six times to the jury. So, they were exposed to that six times. And all the other statements were too big except for that. So, the one thing that – Well, he was accused of coming to – I mean, he's in jail because of that incident, correct? He's in prison – No, he was in jail during the telephone conversation. Yes. Because of that incident. Yes. And she was accusing him of – well, she was basically saying, don't – you know, stop coming to see me. And I told you to stop coming over here, and you came over here. He doesn't deny that. How is that not an admission by silence? Or wouldn't a reasonable person say, I didn't come to your house? All he says is, I'm going to fight it because your mother didn't see me. I'm sorry. Can you repeat that? Well, I mean, all he said was, I'm going to fight this because your mother didn't see me. I mean, that's the – certainly we're talking about that incident. I mean, reasonable inference, at least, that the telephone conversation and the accusations that the victim is making toward the defendant is that he came to her house in violation of the order of protection. Well, we would contend that it's not an admission because it's too vague. For one, the testimony shows that – well, it actually doesn't show where she actually lives. But it does show that she has her own order of protection against the defendant. She testified that she came to her house – excuse me, he came to her house on several different occasions, but we don't know where her house is. But he says your mother didn't see me, so I'm going to fight it. Right? That still doesn't corroborate where we don't know where she lives. Or even when this occurred. This jail take, this phone call occurred two weeks after. There's a big gap in time. And, again, just because he mentioned the mother doesn't mean that it relates directly to this offense. In light of the – when taken in connection with other facts of this case, we don't know where she lives. We don't know when she's talking about. And we don't know which time. Let's assume for a minute that it's relevant, okay, that it's arguable, that it's an inference, that this is – they're talking about that incident and that he doesn't deny it. So it's admission by silence and admissible. Your argument also is that it was overly prejudicial, correct, because it mentioned prison? Yes. Now, earlier in the trial, when the victim was on the stand, she was asked questions about the affidavit that she had made where she lied in the affidavit or where she said she lied in the affidavit. And she answered, it was an affidavit that Shane told me to write so that he wouldn't go back to prison. So, I mean, that whole thing about going back to prison was injected earlier in the case. There was an objection that was overruled, but that issue hasn't been raised. I mean, it was raised vaguely in the post-trial motion, but it hasn't been raised on appeal. So, I mean, that talking about going back to prison is in the record already. How is it overly prejudicial in this case? Well, I believe she may have said jail, but – No, she said prison. I'll read it to you. It was an affidavit that Shane told me to write so that way he wouldn't go back to prison. And that's at 236 of the transcript. Okay. Irregardless, the prejudicial effect is still different by hearing him say himself, oh, you're going to send me back to prison, or there's no reason to send me back to prison. And on top of that, her credibility was impeached. So the prejudicial effect is still very different. Was the term in prison a misnomer, and he really and she really more accurately should have said jail? Well, I only point out the difference between jail and prison just to say that prison, there is a greater influence or prejudicial effect for prison. Prison means that you've been convicted and sentenced to more than one year, I believe. If you've been sentenced to more than one year incarceration, you go to prison. If you've been sentenced to less than one year, you go to jail. If you go to prison, you usually go because you're a convicted felon. If you're in jail, it usually means that it's a misnomer because you don't usually have people sentenced to less than a year if they're a convicted felon. So was there any issue about whether or not he was a convicted felon? No, there wasn't. Was there any issue as to whether or not he was not in prison? No, but it still goes to show that prison is worse than jail. Which I'm not sure you're answering my question, which was, was the reference to prison a misnomer and both parties meant jail? Did your client, when he said, I don't want to go back to prison, actually meant more accurately, I didn't want to go back to jail? I'm not sure what my client meant, and I don't think the jury was very sure as to what my client meant either, which is indicated by the jury notes, which asked to listen to the jail tapes at a lower volume and a transcript. Did, at the trial, did the counsel object to the testimony on the basis that it was inaccurate factually and that he didn't go to prison and therefore it's even more prejudicial because it's not true? There was an objection made. I can't recall the specific objection. Was it on the basis that it, as you've already said, that it was not an admission? I can't recall, Your Honor. He was on parole, right, and this was a parole hold when he got sent back? Yes, I believe so. And he didn't want to go back to prison to fill out the rest of his term on the old case, is what he was talking about, based on this violation? I believe so, but none of that information was. It was in front of the jury. Yes, it wasn't in front of the jury. I'm kind of confused when you said that, and I think Justice Burke was kind of homing in on it, was that you were claiming that you couldn't or the trier of fact couldn't determine whether or not the alleged admission, which was essentially a non-denial, related to this particular transaction, this charge. Am I correct in understanding that that's part of your argument, that a foundation wasn't laid to indicate that this conversation related to the particular charge? Not that a foundation wasn't laid to admit it, but just that it was too vague to relate to the specific offense. Was there anything in the record that would indicate there was another, we'll just say, visit to the mother's house during those 11 days between the violation and the taping for 12 years? Well, there's evidence through the ex-wife's testimony that he came to her house three different times, but that's also vague. Melissa's house? Yes, Melissa's house. She sat at my house. May I conclude? You can finish. Now you'll have an opportunity to make your vote. For these reasons, we ask this court to reverse his conviction and remand for a new trial where the jail tape is excluded in its entirety. Thank you. Mr. Taylor, you may proceed.  How are you? Hello. My name is Ivan Albert Taylor, Jr. I'm on behalf of the state. Despite the defendant's claims, he was given a fair trial in this case. The trial court may not have presented the zero principles as accurately as they should have, but that does not mean that the evidence was closely balanced. Furthermore, the trial court did not err by allowing the state to provide parts of the recording of the jail phone call between the defendant and his ex-wife, Melissa Bowman. Starting with the argument of whether or not it was closely balanced, if it wasn't in this case, here the defendant was charged with violating order of protection. In order to prove that guilt, the state has needed to show that there was a proper order of protection in place and that the defendant violated that order. Who put the defendant at the scene? Both Melissa Bowman and her mother, Linda Butler, were the defendants at the scene. Were they not both substantially impeached? Yes, they were impeached by both the Office of Process Animation and by the officer who was investigating. The officer never saw the defendant. I'm sorry? The officer never saw the defendant at the scene. That's correct. The officer never saw the defendant at the scene. Did he ever see the defendant at all? That night, I do not believe the officer saw the defendant at all. I believe the officer, having responded to the call, did search for a defendant, found the open gate, but didn't see the defendant around the area. So if you only have two witnesses who put the defendant at the scene and both are impeached, how is that not closely balanced? It's not closely balanced because there's additional admissions from the defendant himself to the jail recording. When the defendants decided to call his ex-wife, he made several admissions on that recording. Although only part of the recording was while he entered the evidence, that was more than enough to show that he knew he was there at the time and that he should not have been there. Well, it's far from conclusive. While the defendant does argue that it's vague, the timing of the call, only 11 days after the incident, and the fact that the... When was the defendant arrested? Unfortunately, I do not recall the exact date the defendant was arrested. So he was at large for a couple of days, and the inferences the defense argues is that he then went to Melissa's house, and that's what the reference was. The thing is that there was never a record where Melissa was staying during that time frame, whether she had a separate house or she was staying with her mother. Generally, when someone is staying with a parent, even for a term of time, that's still your home. So her reference to her house is usually a reference to her mother's house. Or not. I mean, isn't that one of the elements that makes this arguably more closely balanced? I mean, you're relying on the tape to sort of bolster these pretty severely impeached witnesses. And, you know, if you start to parse the statements on the tape, whose house? Where was it that he said he went? Can I infer from the statement, I'm going to fight this because your mother didn't see me, does that mean because I have a good defense or because I wasn't there? She didn't see me because I wasn't there. With all due respect to the defendant, perhaps he's not the most articulate guy. With all due respect to the defendant, yes. But that's one way of looking at it. However, just given the context of this defendant, obviously there's a history between the defendant and his ex-wife and the mother-in-law. The ex-mother-in-law. For him to decide to still call his ex-wife even after being arrested for violating order of protection, in a statement that says, I don't care what order of protections there are, I'm still going to see you, that in itself shows that defendant, that this incident, the call was related to this particular incident. And that the defendant doesn't care that he's not supposed to be a certain place. He will do what he wants. But as for the impeachment, while there was impeachment of Melissa Beaumont and Linda Butler, it was not so severe as to just make their testimony irrelevant. And as for Melissa's statement that she had previously made a false statement in the affidavit, she did admit to that and the jury did see it and was able to hear that information. And despite those occasions, was able to conclude that the defendant had violated the order of protection. Moving on to the tape itself and the trial court allowing it into evidence. Initially, the trial court was going to allow the entire recording in and just have the limited instruction. But after most of the hearing, he decided to instead just bring out portions in and try to make sure that anything that was too prejudicial was not allowed to come into court of jury here. And to only listen to those portions which were actually admissions. When Melissa was referring in the conversation to her house, was she referring to a house that she owned independent or leased independent of Ms. Butler? Or was it Ms. Butler's house that Melissa was staying at that she was referring to? She was referring to the house that she was staying at. There was nothing else brought in that Melissa had owned her own separate home at the time of this incident as she was staying with her mother, which would be her home. And her reference is, why do you keep coming to my house? Is with reference to in fact coming to her mother's home. And one final note to make is that during recording, I do believe that the defendant does say jail and not prison during the recording itself. Were there any more questions with regards to the jail recording? I don't have any. No more questions? I think we will conclude. The state contends that despite the trial court not giving the properties their principles, the evidence was not closely balanced. And the trial court did not err when it allowed the portion of the jail recording to be played to evidence. And we ask that you affirm the defense's conviction. Thank you. Thank you. The sedatives? You may proceed. Thank you. I would again note that the closely balanced analysis is not about the sufficiency of close evidence. It's about the closeness of sufficient evidence. And in light of the totality of these circumstances and this evidence, the jury still had questions or had trouble rendering its verdict. There's, again, one simple issue here, whether he was at the protected residence. And the jury still had questions, especially in light of the substantial impeachment that happened. And counsel notes the open gate, that that cooperates, that he was in fact there. There was no testimony that spoke to when the gate was even open that night, so that doesn't cooperate. And the history between these two shows that it is equally plausible that the ex-wife could have fabricated the entire story, which makes both versions plausible here, no evidence corroborating or contradicting either version. And as the court noted, the jail tapes are far from conclusive. It's too vague. It's too open to interpretations as to what the defendant meant. And even if it is admissible, which we contend it isn't, the case was still closely balanced. And the jail tapes were in connection to the ex-wife's credibility. They were tied together because the ex-wife also was making statements in that recording, and she also knew his circumstances due to their history together, and she had previously lied about him twice before. So in light of all that. I think we sometimes tread on thin ice when we read certain facts into jury questions. And I know what the jury asked here, but to read an intention into those questions, I don't know. I'm always troubled by that. Well, just the sequence of the jury notes would seem to indicate that even after listening to these jail tapes, they still had questions, and I believe they asked for the definition of reasonable doubt maybe 45 minutes after listening to these jail tapes. And, again, there was only one issue here, whether he was at that protected residence on that night. And they still apparently had trouble rendering a verdict. That's that one simple issue. And for that reason, since both versions were plausible here, the case was closely balanced, and these areas could have hit the scales against the pendant. And for those reasons, we again ask that you reverse these convictions and remand for a new trial with the jail tape excluded in its entirety. Any other questions? No questions. Thank you.